**FILED**

**April 26, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0973 – *West Virginia Office of Miners' Health, Safety and Training v. Bobby Beavers*

Chief Justice Hutchison, dissenting, joined by Justice Moats:

I dissent because the majority opinion has rewritten state law, and in doing so has imposed a bureaucratic mindset that violates fundamental principles of due process.

At its heart, this case is about evidence and the burden of proof. Basic principles of due process tell us that it is the proponent of a theory who bears the burden of proof. Moreover, as written, the state law governing hearings before the Coal Mine Safety Board of Appeals ("the Board") incorporates those basic principles of due process. In order for the Board to suspend a miner's certificate to work, state law requires the introduction of evidence showing "by a preponderance of the evidence" that the suspension is warranted. The state law provides that

> the board shall proceed to determine the case *upon consideration of all the evidence offered* and shall render a decision containing its findings of fact and conclusions of law. If the board finds *by a preponderance of the evidence* that the certificate or certificates of the charged person should be suspended or revoked, as hereinafter provided, it shall enter an order to that effect.

W. Va. Code § 22A-1-31(c) (2016) (emphasis added). Hence, in this case, the Office of Miners' Health, Safety and Training ("OMHST") bore the burden of proving to the Board, by a preponderance of the evidence, that Bobby Beavers had "Cannabinoids/THC" in his system. *See* W. Va. Code § 22A-1A-1(a)(1)(B) (2019).

1

The majority opinion fairly renders the facts: Mr. Beavers tested negative for THC in a drug screen on February 9, 2020.  On February 10th, when Mr. Beavers asked his pharmacist for something to help him sleep, the pharmacist recommended an over-the-counter hemp-derived remedy that contained CBD.  The pharmacist assured him the CBD wouldn't affect any drug screens.  Mr. Beavers used the CBD product that night.  The next day when he showed up to work (on February 11th), he was surprised with another drug test.  This time, he tested positive for some form of THC.  Upon receiving the positive test, OMHST suspended Mr. Beavers's certificates to work as a miner for a period of six months.

Mr. Beavers appealed to the Board.  Before the Board, OMHST bore the burden of proof.  The Board obviously heard the testimony and the evidence from Mr. Beavers indicating that he never *intentionally* consumed any THC-containing product.  Unfortunately, as West Virginia's law stands right now, the majority is right: the lack of intent was, sadly, no defense.[1]

---

[1] I encourage the Legislature to study and rectify this issue, because CBD products, contaminated with THC, are becoming common in the marketplace and accidental consumption of forms of THC are likely to become commonplace.  Moreover, while the delta-9 version of THC is the intoxicating form found in marijuana, some CBD products contain non-intoxicating versions like delta-8.  There is a possibility that tests relied upon by OMHST do not necessarily distinguish between legal and illegal forms of THC.  Moreover, as this case makes clear, the tests may not distinguish between legal CBD and illegal THC, resulting in miners being punished for engaging in perfectly legal activity.

The problem in this case is, OMHST put a doctor on the stand who essentially testified that the drug screening test was unreliable and could not distinguish between legal CBD and illegal THC. The doctor stated she was not a scientist and does not conduct any testing, but she admitted that a drug screen might test positive for THC when the actual substance was CBD. The doctor also said she could not testify if the testing process could distinguish between THC and CBD. Based upon the doctor's testimony, the Board reached its ultimate conclusion founded "upon consideration of all the evidence offered:" OMHST had failed to prove by a preponderance of the evidence that Mr. Beavers had THC in his system. The Board considered the evidence presented and concluded that OMHST's doctor "was not able to testify that the testing mechanism or methodology could distinguish between THC and CBD."

I dissent because the majority opinion has rewritten West Virginia Code § 22A-1-31(c) and turned due process on its head. Contrary to the law, the majority opinion conducts its own fact-finding mission and *presumes* that the test results offered by OMHST are valid and reliable. Thus, the majority opinion wholly ignores the Board's finding that the test results proved nothing. Instead of following state law and putting the burden of proof on OMHST, the majority opinion places the burden squarely on Mr. Beavers. It chides him for "proceed[ing] without a lawyer,"[2] and repeatedly points out that he "did not

---

[2] ___ W. Va. at ___, ___ S.E.2d at ___ (Slip. Op at 3 and 4).

3

properly challenge his test results."[3] Mind you, thanks to OMHST's suspension of his miner's certificates, Mr. Beavers was unemployed and facing six months without work, with a pregnant wife and two young children at home. Under these circumstances, I can only say that the majority opinion's suggestion that Mr. Beavers should have hired a lawyer and paid cash "to have his split sample tested at a SAMHSA certified laboratory" is unfair and unrealistic.

But the fact remains that Mr. Beavers bore no burden of proof, and the majority opinion cites no rule, statute, or most importantly, constitutional provision putting the burden on Mr. Beavers. True, the majority opinion cites a rule in the *Code of State Rules* as support for its conclusion that "[t]he Board did not have the legal authority to disregard the laboratory test,"[4] but that is a misstatement of the cited rule. The rule provides that unchallenged test results "shall be admissible as though the [miner] and the Director [of OMHST] had stipulated to their admissibility." 56 C.S.R. § 19-8.4. The rule certainly made OMHST's test results *admissible* into evidence, but it did not make those test results conclusive, irrefutable proof or shift the burden of proof to Mr. Beavers. Once the drug screen results were admitted, the Board was free to ascribe to the results any probative effect it felt warranted, based "upon consideration of all the evidence offered." Based upon

---

[3] ___ W. Va. at ___, ___ S.E.2d at ___ (Slip. Op. at 13).

[4] ___ W.Va. at ___, ___ S.E.2d at ___ (Slip. Op. at 15).

4

the testimony of the doctor offered by OMHST, the Board concluded that the drug screen results were unreliable and failed to establish that Mr. Beavers had THC in his system.

Hence, I dissent because the majority opinion has obliterated the fact-finding powers of the Board, despite those powers being contained within state law. Specifically, the majority opinion eviscerates the Board's power "to determine the case upon consideration of all the evidence offered"[5] and narrows it down to one question: "did he have a valid positive cannabinoids/THC test result?"[6] Again, the majority opinion ignores the Board's findings that the test results were invalid. Instead, the majority opinion makes its own findings of fact, declaring that "yes" the test was "valid" and contained THC because Mr. Beavers did not spend his money on a lawyer or additional testing to prove otherwise. In effect, the majority opinion creates a presumption of reliability for whatever evidence OMHST presents to the Board, and rules that it is miners who bear the burden of *disproving* that evidence.

In sum, while the majority opinion claims it cannot act as a "superlegislature" and rewrite a statute, it has simultaneously rewritten two statutes at once. It has crippled the Board's fact-finding ability under West Virginia Code § 22A-1-31(c), and effectively converted West Virginia Code § 22A-1A-1 into a strict liability statute. Thus, so long as an employer or the OMHST produces a test positive for THC, from whatever source or

---

[5] W. Va. Code § 22A-1-31(c).

[6] ___ W. Va. at ___, ___ S.E.2d at ___ (Slip. Op. at 21).

5

quality, the Board must blindly accept that evidence and act without question or any other proof.

The result is that the majority opinion wholly ignores due process.[7]

I understand that illicit drug use is rampant in West Virginia. I also sympathize with mining companies and other employers who are determined to maintain safe work sites. An impaired worker is a dangerous worker, and employers should be allowed to rely upon medical test results to secure the safety of their workplaces. We can argue all day about whether Mr. Beavers was impaired on the jobsite by having trace amounts of THC in his system, but that is the policy argument upon which the majority opinion claims it is deferring to the Legislature.

---

[7] In a footnote, the majority opinion misrepresents the point of my dissent. Let me say it again, in a nutshell: I am dissenting because the Board found that OMHST failed to meet its burden of proof and establish by a preponderance of the evidence that it could take Mr. Beavers's licenses. After viewing *all* the evidence, the Board concluded that OMHST failed to show that Mr. Beavers had THC in his system because the test OMHST offered could not distinguish between illegal THC and legal CBD.

The majority opinion, however, in footnote 12, misreads this dissent and appears to deliberately misunderstand the meaning of "burden of proof." The opinion's footnote creates a non-existent, strawman position and recasts the dissent as my "desire to implement testing procedures that can distinguish between legal CBD and illegal THC." The footnote then boldly knocks down that strawman and concludes "it is not the province of this Court to require the OMHST to do so." The problem for the majority opinion is that I have advocated for no such test. I only advocate for the majority opinion to follow the law as it is written, to not subvert the Board's statutory duty as factfinder, and to not rewrite the law to unconstitutionally impose its own preferred policy position.

6

The reality is that this case isn't about a workplace safety decision; this is about a decision by the State and its agencies to deprive a citizen of a government-provided certificate allowing him to work. This is a constitutionally provided benefit, and due process attaches to protect that benefit. The case before the Court has no bearing on an employer's right to maintain safety. Shifting the burden of proof onto the miner, and rewriting state law to create a presumption that the government's evidence is always right and probative, turns due process and fairness on its head.

I therefore respectfully but strenuously dissent to the majority's opinion. I am authorized to state that Justice Moats joins in this dissenting opinion.